Case 5:18-cv-05067-TLB   Document 1   Filed 04/26/18   Page 1 of 12 PageID #: 1

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

APR 2 6 2018

DOUGLAS F. YOUNG, Clerk
By
  Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JESSICA McKINNEY,            PLAINTIFF
As next friend and legal guardian of
K.P. a minor

vs.          CASE No. 18-5067

HUNTSVILLE SCHOOL DISTRICT,          DEFENDANTS
and ROXANNE ENIX in her individual capacity
as Principal of HUNTSVILLE HIGH SCHOOL
and JOHN DOES 1-10 in their individual capacities.

## COMPLAINT

**COMES NOW** the plaintiff, and for her complaint, states and alleges as follows:

### Preliminary Statement

1. Under the U.S. Constitution, public school students do not shed their right to free expression at the school house gates, and a school district's lawful ability to regulate student speech is limited to only those exceptions that owe to the special mission of public schools, exceptions that have been carved out by First Amendment jurisprudence. A school district's ability to regulate student speech is even more limited outside of the school or school sponsored activities   This is a case where a school district has exceeded those lawful limits. K.P. a junior in high school, has been suspended and expelled from the Huntsville School District because K.P posted to his private Instagram account a wordless photo of himself in the simple act of bearing a firearm while he was in his father's home, on a weekend, and under his father's direct supervision.  For this exercise of protected expression, KP has been expelled from the school district for an entire year.

1

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 on behalf of K.P., her son. She seeks redress for deprivations of constitutional rights under the First, Fifth, and Fourteenth Amendments, which redress includes a preliminary injunction to enjoin this unwarranted and irreparably harmful expulsion.

## Jurisdiction and Venue

2. This Court has subject-matter jurisdiction pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 1331 and 1343. The Court can grant declaratory relief pursuant to 28 U.S.C. §§ 2201(a) and 2202. This court has supplemental jurisdiction over plaintiff's pendent state law claim of defamation under 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. § 1391(b) as Madison County, Arkansas is where the entity defendant resides and where a substantial part of the events or omissions giving rise to the claim occurred.

## The Parties

4. Jessica McKinney is the mother and custodial parent of K.P. She resides with K.P. in this judicial district and brings this action as next friend on K.P's behalf.

5. Huntsville School District (hereinafter the "District") is a body corporate which is empowered under Arkansas law A.C.A. § 6-13-102 to contract, sue and be sued. Under Arkansas law the District is governed by a board of directors. This board possesses final authority to establish municipal policy with respect to the school expulsion that gives rise to this lawsuit. The District can be served with process through Mr. Clinton Jones, who under Arkansas law is the District Superintendent, serving as the District's executive officer of the District's board of directors directing the affairs of the school district.

6. Roxanne Enix is the principal of Huntsville High School. Under Arkansas law (A.C.A. §

6-17-302) Ms. Enix is charged *inter alia* with the supervision and management of the school and property. Ms. Enix is hereby sued both in her official and individual capacities.

7. John Does 1-10 refers to those currently unknown members of the Hunstville School District School Board whose decision-making-conduct effectuated the expulsion of K.P.

## FACTUAL BACKGROUND

8. On Saturday, February 24th, 2018, K.P. was enjoying weekend visitation with his father at his father's home in Rogers, Benton County, Arkansas.

9. During the visit, K.P and his father were taking photographs. K.P.'s father took a number of photographs of K.P.

10. During the photo-shoot, K.P.'s father let him use as a prop a non-functioning AR-15 rifle that his father owned. K.P. wanted a photo that emulated a 1920's style photo of a man holding a tommy-gun because K.P. found the photo aesthetically pleasing,

11. Because there was no tommy-gun available, K.P. posed with the AR-15 as his father took a photograph. After comparing the photo of himself holding the AR-15 to the 1920's photo further, K.P. liked the pictorial attempt he had made to emulate the 1920's photo, and so he posted the same photo himself on his private Instagram account simply to display what he believed to be "a cool photo."

12. K.P's Instagram photo post was totally devoid of verbal content. It was simply a photograph with no accompanying words to dilute the artistic message that K.P. had intended.

13. Subsequently, other juveniles who had access to K.P.'s Instagram posted comments that injected a school shooting motif.

14. The comments by the other juveniles were unknown to K.P., who had gone to bed. Upon seeing the comments the following morning, K.P. promptly deleted the post and blocked access to his Instagram account in a manner calculated to prevent similar comments.

15. On the same date that K.P. had posted the photo on Instagram, unknown persons had brought the posting to the attention of defendant Enix, K.P.'s school principal. As a result, a police investigation by the Huntsville Police Department into the Instagram posting and its surrounding circumstances ensued. On Sunday evening, 02/25/18, police arrived at the plaintiff's home where K.P. had returned after the weekend visit with his father.

16. K.P. advised police as to the circumstances relating to the posting the photo and as to K.P.'s purely aesthetic motive in posting the photo on Instagram. K.P. further advised police that he had deleted the comments others had posted to his Instagram account, comments which made light of school shootings and which K.P. found to be inappropriate. K.P. also voluntarily requested that police take with them K.P.'s own personal guns so as to demonstrate K.P's peaceful motives.

17. The Huntsville Police Department investigation concluded with an official determination by police that K.P. had committed no crime and posed no threat against his school.

18. On Monday, 02/26/18, one of the officers from the Huntsville Police Department who investigated the Instagram posting came personally to Huntsville High School and informed defendant Enix that the Huntsville Police Department found K.P. to have committed no wrong-doing and advised that K.P. should not be considered a threat. Defendant Enix, without having a rational basis to do so, took issue with the reporting

officer and was dismissive of the findings of the official investigation.

19. On Tuesday, 02/27/18, Defendant Enix wrote a letter to K.P.'s mother, plaintiff herein, advising that as of 02/25/18, K.P. was suspended from school for 10 days *"because of terroristic threatening of school shooting posts on social media. [KP] will be recommended for expulsion for 365 days with a loss of academic credit."* This letter became part of K.P.'s school record along with another sheet of paper that identifies K.P's conduct simply as "terroristic threatening."

20. Terroristic threatening is a crime under Arkansas statutes.

21. At any and all relevant times that defendant has accused KP of terroristic threatening or similar crime she has known that no law enforcement authority has ever charged or intends to charge KP with terroristic threatening or with any other crime or violation in connection with the Instagram posting.

22. An expulsion hearing before the Huntsville Board of Education was held on 03/05/18 whereupon the Board expelled K.P. from school for 365 days with loss of academic credit. The Board also expelled one or more of the school students who commented on K.P's Instagram post for the comments the student(s) had posted in response to K.P's photo.

23. At the expulsion hearing, defendant Enix, advocated for K.P's expulsion and testified in furtherance of her advocacy.

24. In advocating for K.P's expulsion, defendant Enix relied on Sections 4.17 and 4.20 of the Huntsville High School Student Handbook, which are attached hereto as Exhibit C-1 and C-2 and which state in pertinent part:

"4.17 -- The District's administrators may also take disciplinary action against a student for off-campus conduct occurring at any time that would have a detrimental impact on school

5

discipline, the educational environment, or the welfare of the students and/or staff. A student who has committed a criminal act while off campus and whose presence on campus could cause a substantial disruption to school or endanger the welfare of other students or staff is subject to disciplinary action up to and including expulsion. Such acts could include, but are not limited to a felony or an act that would be considered a felony if committed by an adult, an assault or battery, drug law violations, or sexual misconduct of a serious nature. Any disciplinary action pursued by the District shall be in accordance with the student's appropriate due process rights.

"4.20 -- No student shall by the use of violence, force, noise, coercion, threat, intimidation, fear, passive resistance, or any other conduct, intentionally cause the disruption of any lawful mission, process, or function of the school, or engage in any such conduct for the purpose of causing disruption or obstruction of any lawful mission, process, or function. Nor shall any student encourage any other student to engage in such activities."

25. At the hearing, K.P. testified that his intent and purpose in posting the photo was aesthetic in that he was attempting to emulate the 1920's style photo which was shown to the board. K.P. testified further that he knew the Student Handbook and found nothing in its provisions that prohibited the form of expression for which he was facing expulsion.

26. The School Board's decision announced at the end of the hearing was to expel K.P. from the school district for 365 days per the recommendation of defendant Enix.

27. As a result of the school suspension and expulsion described hereinabove, K. P. has suffered loss as described below with reference to the damages he has sustained and the irreparable harm he has suffered by being deprived of his First Amendment rights and being deprived from attending school and pursuing an athletic scholarship.

28. The foregoing factual allegations are incorporated and re-alleged in the paragraphs that follow.

## COUNT I – DEPRIVATION OF RIGHT TO FREE SPEECH

29. K.P.'s posting of the photograph on his private Instagram account is protected expression under the First Amendment to the U.S. Constitution as applied to the states through the Fourteenth Amendment.

30. The District's decision to expel K.P. because of the expressive content of his Instagram post constitutes state action under color of law in the form of a policy, custom or usage by which the District has subjected K.P. to the deprivation of his first amendment right to free expression.

31. As a result of the District's actions K.P has sustained damages that include, but are not necessarily limited to, the deprivation of the fundamental right to freedom of expression, loss of school, mental anguish, fear and humiliation for which the District is liable under 42 USC § 1983.

32. Furthermore, the District's unconstitutional expulsion has caused K.P. to suffer irreparable harm that is exacerbated with every day of school that he cannot attend for which plaintiff is entitled to declaratory relief and injunctive relief in the form of a temporary enjoining the expulsion and a permanent injunction as requested in the prayer for relief at the end of this pleading.

### COUNT II – DEPRIVATION OF DUE PROCESS
### (Void For Vagueness, Facially and As-Applied, and for Overbreadth)

33. The related provisions 4.17 and 4.20 of the school handbook on which the District's disciplinary action against KP was predicated violate the due process guaranteed by the 5th and 14th Amendments. Furthermore, provisions 4.17 and 4.20 implicate the First Amendment's right to free expression and thus the constitutionality of these provisions require scrutiny under the 5th and 14th Amendments that would not apply if the First Amendment were not implicated.

34. **Void for Vagueness**: Said handbook provisions are unconstitutionally vague. They are too confusing and lacking in sufficient definiteness to give fair notice to an ordinary student as to what kind of off-campus behavior is prohibited by these related sections.

Specifically, provisions 4.17 and 4.20 create substantial uncertainty as to whether punishable off-campus conduct is limited to criminal acts, or whether it may involve an intentional non-criminal act, or whether it may be predicated on an act that is neither criminal nor intentional.

35. Provision 4.17 and 4.20 are so imprecise as to leave school officials devoid of standards to enforce the provisions in a non-arbitrary, non-discriminatory manner.

36. As applied to K.P. the aforementioned handbook provisions lack sufficient precision to have notified him that his conduct constituted a violation of the school handbook and the absence of sufficiently definite standards for enforcing the provisions likewise worked to deprive K.P. of his right to due process under the 5th and 14th Amendments.

37. **Void for Overbreadth**: The handbook provisions utilized to justify the expulsion of K.P. suffer also from unconstitutional overbreadth. Specifically, provision 4.17 is rendered overbroad by its first sentence: "The District's administrators may also take disciplinary action against a student for off-campus conduct occurring at any time that would have a detrimental impact on school discipline, the educational environment, or the welfare of the students and/or staff." Since the nature of the off-campus conduct that would warrant discipline based on detrimental impact on the school environment is undefined, this sweeping handbook provision may have a chilling effect on the free speech rights of those not before the court.

38. The District's promulgation of the aforementioned handbook sections and the District's action taken under them were under color of law depriving KP of due process and causing damages as described in Count I of this complaint and for these damages the District is liable under 42 USC § 1983.

## COUNT III – DENIAL OF SUBSTANTIVE DUE PROCESS

39. In the alternative, insofar as handbook provisions 4.17 and 4.20 might be interpreted to require a either a criminal act or an intentional or purposeful disruption of the school environment for students to be expelled for their off-campus activity, the District's application of the handbook provisions violated K.P's constitutional right to substantive due process.

40. The Huntsville Police had fully apprised the school officials involved that KP had committed no criminal acts and was not considered a threat to the school. Nonetheless, KP's suspension and expulsion proceeded on the allegation of "Terroristic Threatening of School'Shooting."

41. There was absolutely no evidence before the School Board that KP had committed either a criminal act or an intentional act whereby he purposely sought to cause disruption the school environment.  Nonetheless, K.P was expelled.

42. The District's expulsion decision violates substantive due process because it was arbitrary and capricious, or irrational or motivated by bad-faith or ill-will.

43. The District's action taken under color of law depriving KP of substantive due process caused damages as described in Count I of this complaint and for these damages the District is liable under 42 USC § 1983.

### COUNT IV – CONSTITUTIONAL DEPRIVATION BY DEFENDANT ENIX

44. By her actions as described above Defendant Enix's suspension of KP and her substantial role in effectuating KP's expulsion render her liable for having, under color of law, subjected KP to the deprivation of his First Amendment right to freedom of expression that was clearly established at all relevant times.

45. As a result of defendant Enix's unconstitutional conduct, KP has suffered damages including but not limited to deprivation of a fundamental right, loss of school, mental anguish, fear and humiliation. Defendant Enix is liable for these damages.

46. Defendant Enix undertook her course of action in defiance of the findings of a police investigation that she had requested. She knew or ought to have known, in the light of the surrounding circumstances, that her conduct would naturally and probably result in damage and yet she continued such conduct with malice, thus rendering defendant Enix liable for punitive damages.

### COUNT V – DEFAMATION

47. Defendant Enix published a false statement of fact concerning KP, accusing him of criminal and terroristic conduct toward a school community.

48. The false statement of fact was defamatory.

49. Defendant Enix published the false statement of fact with knowledge that the statement was false or with negligence in failing to determine the truth of the statement prior to its publication.

50. Defendant Enix's defamatory conduct proximately caused KP damages, including damage to reputation, loss of school, mental anguish, humiliation and fear.

51. Defendant Enix is liable for punitive damages as knew or ought to have known, in the light of the surrounding circumstances, that her conduct would naturally and probably result in damage and yet she continued such conduct with malice.

### COUNT VI – CONSTITUTIONAL VIOLATION BY JOHN DOE DEFENDANTS

52. By their actions as described above, the members of the school board who voted to expel K.P. are liable in their individual capacities for having, under color of law,

subjected KP to the deprivation of his First Amendment right to freedom of expression that was clearly established at all relevant times.

53. As a result of the John Doe defendants' unconstitutional conduct, KP has suffered damages including but not limited to deprivation of a fundamental right, loss of school, mental anguish, fear and humiliation. Each John Doe defendant is individually liable for these damages.

54. Each John Doe defendant is liable for punitive damages. Each knew or ought to have known that his or her conduct would naturally and probably result in damage and yet continued such conduct with malice.

**WHEREFORE, PREMISES CONSIDERED**, the plaintiff prays:

a) That the court grant the plaintiff declaratory relief, to include a declaration of the unconstitutionality of the state action and the student handbook sections described herein;

b) That the court grant a preliminary and permanent injunction enjoining the school expulsion and enjoining defendants from making the suspension and expulsion part of KP's scholastic records and further enjoining the defendants from future unconstitutional violations of the kind sued hereon;

c) That the court grant a trial by jury and cast judgment against each defendant for nominal, compensatory and punitive damages prayed for herein in an amount to be determined by the trier of fact;

d) That the court grant attorney's fees pursuant to 42 USC § 1988; and

e) That the court grant any further relief that is appropriate under the circumstances.

Respectfully Submitted,
JESSICA MCKINNEY

BY: /s/

Monzer Mansour (97144)
70 College Ave. Suite 10
Fayetteville, Arkansas 72701
Tel: (479) 521-6361
Email: monzerlaw@gmail.com

and

/s/ W. Whitfield Hyman (with permission)
W. Whitfield Hyman (#2013-237)
King Law Group
300 N. 6th Street
Fort Smith, AR 72901
Tel. (479)782-1125
Fax: (479) 316-2252
hyman@arkansaslawking.com

Attorneys for Plaintiffs